May it please the Court, Angela Dowes for the appellant and defendant Donnie Bryant. I would like to reserve two minutes for rebuttal in this matter. Good luck. Your Honor, this is a divisive case. On the one hand, you have a murderer, a self-admitted gunslinger. Yet on the other hand, you have a very troubled youth. And the issue is, how is this best addressed? And I just wanted to go through in the order of briefing, the first being Miller v. Alabama. Well, the Court obviously knew about it. There was a whole separate sentencing proceeding that followed upon the remand. And speaking only for myself, it seems to me that the Court was very, very thorough, very careful, very compassionate in considering youth and age. And, you know, the maximum sentence was 150 years, which wasn't sought, because erroneously it had been 40 previously and it was kept at 40. And instead of mandatory life, there's 40 years. So I guess I have a hard time seeing how we can interfere with the district court's decision here. Your Honor, and I understand the difficulty, because it is when is enough evidence enough? And sometimes all evidence doesn't need to be reviewed before coming up with a decision. But this is a unique case. What evidence? The district court said he had read everything. He had read the pre-sentence report, all the things that the parties had brought him. Including this lengthy defendant's sentencing memorandum where all the factors are laid out in Miller v. Alabama terms. How long do you think this sentence is? In terms of how long do I? How many years is this sentence? On count one. On count one. What's the total? Total was 80 years, Your Honor, so that he has been continuously held since he was 16 years of age. And he has a release date of 2076, 71 years from the date of arrest. But the only one that's discretionary is count one, right? Right. Correct, Your Honor. And I hate to use it. Is that yes or no? Yes, Your Honor. Okay. So the only discretionary piece of this for the court is what to do with count one, which is a potentially life sentence, right? Yes. And so where is the abuse of discretion or procedural error in the selection of 40 years on that count? Your Honor, it was the issue of what information the court reviewed and should have reviewed and should have been brought by. What didn't the court review, in your opinion? In my opinion, the defense counsel didn't bring enough information to the court to be able to review that information, or the court didn't allow it to be reviewed. For example, on the record, defense counsel asked for a continuity of the hearing for a psychiatrist. That's the only thing the court didn't allow, as far as I can see, and it was, you know, I don't know what the relevance of that would be when the court said he was very cognizant of the person's youth and the fact that he had attempted to make efforts to rehabilitate himself, and the court specifically talked about that at some length. It's unclear to me what would have been added by that, but he said he reviewed everything, and don't we have to believe that? Your Honor, yes. Counsel even said, look, I don't even think this is a great issue, but my client wants to bring it up. Yes, and I wish it was given more of a serious thought, Your Honor, just under the standards of Miller v. Alabama. This is a troubled youth. He had a long history. He was threatening to kill people in detention centers. At the age of 12, he was arrested for domestic violence against his own mother. And this was his second murder? Yes, Your Honor. And he was on monitoring when he committed this set of facts. Yes, Your Honor. I cannot change those facts, and there are very grave circumstances, certainly. But that's the symptoms. What's the cause of this? And I don't pretend to argue there's some magic thing in his past that will somehow reprieve him. Now, in your brief, you said the issues presented are, first, the district court has abused its discretion by opposing Mr. Bryan's sentence without considering the factors of Miller v. Alabama. In the trial court, did counsel for your client object at the end that you didn't consider the Miller v. Alabama factors? No, Your Honor, there was no objection. Is it fair to infer from that that the counsel thought he did consider the Miller v. Alabama factors? I don't have any. He didn't object, right? Correct. Correct. What about number two? Did the district court abuse its discretion by opposing a sentence that is disproportionate to the crime committed under the Eighth Amendment? Was that objection made at the end of the hearing? No, Your Honor. No. Did the district court abuse its discretion in not considering the sentencing factors? Did counsel stand up and say you have not considered the sentencing factors? No, Your Honor. So these are absolutely new issues before this Court and not objected to in the Court below, absolutely, Your Honor. And I understand that. I just don't want that to be what rules the day here, certainly, because here's an issue. You see, if lawyers on the spot, having submitted this sentencing memorandum, understanding the case, reading all this stuff, if they're sitting there and they don't see any of these errors, then all of a sudden you pick you – I don't mean this as a criticism, but you sort of pick them out of the air. This happens all the time. Yes, Your Honor. There was – Isn't the trial court going to think we're nuts if we send this back, take another look and say what do you want me to do, read the case out loud on the record? I would hope not, Your Honor. And the Court did say that they were – the one thing they were equivocal about was that psychiatric report and that they could be mistaken about that. So there is that indication there. Yes, but, you know, isn't that the sort of kind thing that a district judge is likely to say to not make counsel feel bad? I mean, I don't think he's really saying – I think I'm wrong not ordering this, but he says, listen, I don't need an expert to tell me that youth is a big issue and that people don't have judgment yet that they later acquire and that people can change. I mean, he talked about all of that at some length and said, I don't think an expert will add to my understanding of that because I already get it. So where's the error? Your Honor, yes, and I don't pretend to know what the district court was thinking when it was saying certain words, certainly. The error is – Or could. Life, Your Honor, which is mandatory. Mandatory. Yes. So you conceded that the consecutive sentences couldn't be – were not part of the discussion. But think about it. If because he's a juvenile and he can be considered for less than life because otherwise he's going to run afoul or potentially run afoul of the Supreme Court's opinion. So why does – why shouldn't the judge be looking at the whole sentence, including the consecutive sentences? Because if you keep adding on consecutive sentences, then you get to life anyway. So it seems to me that what the judge should be doing is looking at the whole sentence. Or am I wrong? Does he look at one sentence and then he looks at the other count? Or should he be – I'm asking you for your advice. Should he be looking at the whole sentence or should he divide it up? Your Honor, certainly, if that goes to the Eighth Amendment issue, yes, because 80 years is the whole sentence and it's for the same conduct. And the recommendation by probation for this was 150 years. Okay. So then my question is, did the judge look at the whole sentence? Did he look at the whole 80 years? Yes and no. Certainly, that's what – the 40-year part of it was reviewed, right, because that was the Miller issue. The other part was very much in his favor, too, as it turned out, because instead of 150, he got 40. And Miller doesn't preclude a life sentence for a juvenile, does it? No, Your Honor, it does not. It only says that it must be individually considered and cannot be mandatory, correct? Yes, Your Honor. So it's not per se a violation of Miller that he ends up with 40 years on the murder count, the vicar count, and 40 additional for other crimes? Correct, Your Honor. So – okay. I just have a minute. You're agreeing with Judge Graber, so I'm having a hard time understanding what your argument is. I was thinking your argument was this is the equivalent of a life sentence, and the judge didn't really do that. What he did was consider the first part and then just add on the consecutives, and he really didn't consider that this whole thing was a life sentence, and it needs to go back to the judge for him to consider whether the whole thing is a life sentence. I thought that's what you were going to argue, but I don't hear you arguing that. So what are you arguing? I am arguing both, Your Honor. To your argument, that's the Eighth Amendment issue. Really, the whole sentence, is it unreasonable, right, versus Miller, which – Well, so you're making that as an Eighth Amendment argument, not as a Miller argument. Correct, Your Honors. But isn't Miller Eighth Amendment? It is in terms of that one charge, though, the life sentence without the possibility of parole. So that's how I can only address it, Your Honors, if that makes sense, versus whole sentence. If you think the judge didn't do what he was supposed to do, then what should he do? If he thinks this is really a bad guy and I want to give him a good, long sentence with, as the judge says, only a glimmer of hope, then what should the judge do that he did not do? In two words, Your Honor, individual sentencing. So there's these grand statements about youth being, you know, you're more of a risk taker, you're susceptible to influence, but how did that affect Mr. Bryant personally? What about his specific past? And there weren't witnesses, testimony, those sorts of things that can give an idea of what his past is or was. There were dozens of letters that the judge read, and that some of which defense counsel read aloud, talking about his life, and all of this was discussed. This is not something that was ignored. I guess that's my difficulty with your argument. May I answer the question? Yes, please. Under the Miller factors, there are a couple of key things that we're missing, namely his involvement with the criminal justice system in the past. So what about witnesses as far as former prosecutors or detectives, how they interacted with him, certainly even on his prior case, or how he interacted with his trial on this issue? Was there any negotiations? How did he interact before this? And that's one of the elements or guidelines under Miller, Your Honor. Thank you. Thank you. Good morning. Again, Elizabeth White for the United States. Judge Perot actually did do a very thorough job of assessing this case. He started out the hearing by saying to the defendant, you know what? I'm going to go backwards to my question. I understand Judge Perot looked at the vicar and said, I can't give this guy mandatory life. U.S. attorneys conceded it's retroactive. I have to apply Miller, and I'm going to apply my discretion. Yes. And then he adds on the consecutive sentence. Yes. It seems to me the same thing applies, or one could argue the same thing applies. If you get a bunch of mandatory consecutives that add up to 150 years, he then has to say, well, that's life, and how much am I going to apply? Well, he didn't have to go too far because they were only arguing for 40. So I want to know, did the district judge decide this was life or pretty close to it? I know I'm doing that, and I'm doing it because. And did he do the individualized assessment that Miller requires? You know, we're all in this guidelines world, and then we get Miller dumped on it, and we have to do something different. So I want to know if you think the judge did what he was supposed to do and where. Yes, I think he did, and I think excerpt of record from about pages 32 to 37, you know, first of all, he did say, you know, probation had recommended this 150 years on the mandatory because of the five gun charges, and the government said, no, you shouldn't do that because we didn't appeal the first time. And first of all, because of the party presentation principle, we don't think the court should increase, should fix that error that we didn't appeal on the gun charges. And second of all, although this didn't come up, if we, even if we had, I mean, that would raise a really interesting question. If a defendant has five 924Cs, so you've got consecutive 10, consecutive 25, 25, 25, 25, I mean, that's not, that's essentially mandatory life, right? And so that's one of, that's another reason. You're going off on a tangent now. I'm sorry, I am. But if you look at pages 32 through 37, he talks about how this defendant is a poster child for what goes wrong in society with gangs and drugs and violence. This judge had been dealing with this defendant through the trial, the sentencing. But the specific question is whether the judge considered the fact that there were these mandatories. And he starts on page 32 saying, if I follow the recommendation, the effect is 150 years in prison. That doesn't utter the phrase life in prison, but you and I know that not many folks are living, to you know, 125, and he goes on from there to discuss the sentence that he's going to impose. And then on page 34 he says, you know, it's really, it would be appealing to just jump to life imprisonment. I have the discretion, but I could exercise my discretion and reimpose the life sentence. But I want to give you some glimmer of hope. And so he talks about the 40 years, and then he says that that is a total of 80. I mean, he's well aware. On page 37 he says that's a net total of 80 years against which you will receive credit for time served. Eligible to receive good time. I guess you would say that even if he's thinking the guns are mandatory because they're terms of years and not life sentence, that he still has the option of going further down on the vicar side in order to get to where he wants. And that he's indicated he wants to get to 80. Yes. I think that Judge Proulx was well aware of the 40-year sentence because the 40-year mandatory, that had been discussed at significant length. So he knew that. So when he was deciding what sentence to impose for the murder, he knew what the end result would be. He went through, he talked specifically about youth being a factor. He talked about this particular defendant's home life. He talked about this particular defendant's history, which he was intimately aware of. And then he talked about the offense. I mean, this wasn't just a murder in aid of racketeering. This was a chaotic shootout that expressed absolute disregard for human life and human safety. I mean, this was shooting in. As I understand it, he did the actions that caused the people to run into a place where they could be ambushed. Yes. All right. And at the time, he was wearing the ankle monitor, being on supervised release from his prior murder in aid of racketeering. If I looked at this 80 years, considering how old he is, I mean, there wasn't any testimony about, nobody presented anything like, this is how long black men live in prison, blah, blah, blah. This is the equivalent of a life sentence. No. There really wasn't that going on. So that's not before us. But, you know, if you look at this, what, and the Supreme Court said this should be rare. Yes. Because juveniles, if you looked at it as a life sentence, I'm not even sure we have to look at it as a life sentence, but if you look at it as a life sentence, and the Supreme Court says this should be rare, what's rare about this kind of crime, you know, gang violence? The fact that it's his second murder in aid of racketeering, the fact that both of these murders, the one when he was 14 and the one when he was 16, were chaotic shootouts, shooting randomly. I mean, one was, the one when he was 14, it was a high-speed chase, two cars shooting at each other. You know, in this particular instance, other people could have been killed. A woman was injured, actually. A woman in an apartment, a bullet went through the window or wall and injured her. I mean, total disregard for human life and human safety, and this was his second one. And so that, to Judge Prowl, warranted a 40-year sentence. You know, government had recommended that the judge reimpose a life sentence in an exercise of its discretion. Probation had recommended 40 years on the murder plus 150 on the guns, which we didn't, we said the judge should not do, and the judge accepted our argument that he shouldn't do that, shouldn't correct that error. And so what we have here is a judge who clearly struggled and thought and looked at every aspect of this. I mean, you read this sentencing transcript and you read the sentencing memorandums that had been filed. I mean, this is an instance where this judge did exactly his job, and there's just no error. The 40 years for murder can't possibly violate the Eighth Amendment, even 80. I mean, even if you were to look at the whole thing. I mean, you've got, you've got, I've cited, I've cited these three strikes cases that the Supreme Court has cited. Well, you know, eventually we have to write something. Are we supposed to look at the 80 or the 40? For this, for this case, I think, this is, this is a resentencing on count one, so I think you look at the 40. But in the context, I mean, the judge was fully aware that the end result was that this defendant was going to be sentenced to a total term of 80 years. And you can look at either. This is a question of whether the judge abused his discretion, and he didn't. Unless. Thank you, counsel. I think we're done with our questions. You may have a minute for rebuttal, Ms. Dowse. Briefly, Your Honor, under the Eighth Amendment issue, I wanted to raise the idea that other states, in reaction to Miller, have allowed for a parole review after, for example, 15 or 25 years, when the person was a juvenile, when they committed that offense, which Mr. Bryant will not have the benefit of in the federal system. So it's important to maybe. I'm not sure what we should do with that. I mean, I think these states are being nice and sensible, judging juveniles later. But I'm not in Congress. Congress doesn't have a parole system for the feds. So what should we do about that? Your Honor, under the Eighth Amendment, compare that, that part of the Eighth Amendment Solheim issue is comparing what states are doing, what other jurisdictions are doing. So using that under the Eighth Amendment, that's what I would request that that information be used for. All that leads you to is because we don't have a parole system, it's cruel and unusual? Well, Your Honor, and it's tough. I'm throwing out numbers. What's the right number? And I, standing here, couldn't tell you. Hopefully, the district court knows that for sure. And thankfully, I don't have to decide that. But it's tough. It's tough issues all around. And I did want to briefly mention the equitable tolling issue without opening up a whole new line of questioning. He was represented by counsel, my client. So really, there was no information about what communications were attempted at the time he was represented by counsel if he was calling, sending letters to see if equitable tolling should be applied in that case. There just wasn't any information along those lines. So I would request that that information be allowed to be submitted if there is any. Well, if there is any. I mean, we don't even know there is any. You're talking about stuff now that's not part of the record, and you say if there is any. We don't even know there is any. Right. So that's what I would request, that it be remanded to see if there is any. For example, an affidavit from his prior counsel or from Mr. Bryant saying, look, I tried contacting my attorney on these occasions. Like the Holland case, there were several letters written, and that was extraordinary circumstances to allow for equitable tolling. Well, have you explored that? You're asking us now to go on a fishing expedition. Have you explored it? Does this stuff exist? There may be. You're not without. I don't want to waive my attorney-client privilege, but I don't argue that in a vacuum or without information. Well, without asking you to waive the privilege, have you explored it? Yes, Your Honor. And so you're telling us that there is stuff there? Yes, Your Honor. But I don't want to create some sort of grand mystery with that, but I'm stuck with the record as it is, Your Honor. I missed what you were talking about. This is stuff relating to what? Oh, sorry. Communications that my client attempted to communicate with his attorney during that time period. During which time period? The time period of the remand versus the resentencing time period, whether he was going to be resentenced. Okay. Extra stuff that he would have put before the district judge? Right. The sentencing? Right. There wasn't any testimony. That's all I want to know. Counsel made a decision not to put it before the judge. Yes. I, without knowing for sure, I don't know what decision was made or not made deliberately, not so. Thank you, counsel. The case just argued is submitted and we appreciate your assistance to the court and we will stand adjourned. All rise. Thank you, counsel. Ms. Clarke, for this special stand adjourned.
judges: Restani, Trott, Graber